UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                                                  :
JELANI RONDELL ROGERS,                        :
                                Plaintiff,    :
                                                          :          10 Civ. 9285 (JPO)
                           -v-                                :
                                                          :          MEMORANDUM AND
ARRESTING OFFICER CARTAGENA, et al.,   :               ORDER
                                    Defendants.  :
                                                          :
-------------------------------------------------------------- X

J. PAUL OETKEN, District Judge:

This case is a civil rights action in which Plaintiff Jelani Rogers asserts various claims pursuant to 42 U.S.C. § 1983 against the Yonkers Police Department and several of its members: Detective Hector Cartagena; Detective Robert Montalvo; Detective Sergeant Rinaldi; Officer Dibenedetto; Officer Merante; and Officer Keppler. Defendants have moved for summary judgment on all of Plaintiff's claims. For the reasons that follow, Defendants' motion is granted.

**I.    Background**

    **A.    Factual Background**[1]

This case arises from a shooting that occurred on October 23, 2010 at 30 Mulberry Street in Yonkers, New York. (Defendants' Statement Pursuant to Local Rule 56.1, Dkt. No. 55 ("Def.'s SMF"), at ¶ 1.) On that evening, several officers of the Yonkers Police Department (the "YPD") responded to a report that shots had been fired at the Mulberry Street location. (Def.'s

---

[1] The following facts are taken from the parties' Local Rule 56.1 statements and other submissions in connection with the instant motion. These facts are undisputed unless otherwise noted.

Exs. A-C.)[2] Melissa Ramirez ("Ramirez"), the individual present at the scene when the officers arrived, informed them that her ex-boyfriend, Donnelle Little ("Little") had fired shots at her vehicle. (*Id.*; *see also* Def.'s Ex. E.) The officers observed and reported a mark on the rear of Ramirez's vehicle. (Def.'s Exs. A, C.) Ramirez related to the responding officers that Little had left the scene and was driving a gray Lincoln Navigator. (*Id.*; *see also* Def.'s Ex. D.)

The officers found Little, together with his friend Kanalia Anderson ("Anderson"), at a gas station nearby, and transported them, along with Ramirez, to the Yonkers Detective Division for questioning. (Def.'s Exs. A, C, D.) Defendant Hector Cartagena ("Cartagena") was the detective in charge of the investigation associated with the Mulberry Street incident. (Def.'s Ex. E.) Cartagena inspected the scene, and noted that there was a bullet hole in the rear driver's side of the vehicle that Little had been driving (a gray Navigator). A spent bullet was also found inside Little's Navigator. (Def.'s SMF at ¶ 2; *see also* Def.'s Ex. E.) Cartagena also interviewed Little, Anderson, and Ramirez, and determined that Little, not Ramirez, had been the intended victim of the shooting. (Def.'s Ex. E.)

After the incident, on October 24, 2010 around 1:00 a.m., Cartagena took a written statement from Little, who explained that he was on bad terms with Jelani Rogers ("Rogers" or "Plaintiff") and Ramirez. (Def.'s SMF at ¶ 3; *see also* Def.'s Exs. E, F.) Little added that Rogers was dating the mother of Little's seven-year-old twins. Little was concerned that Rogers was a pedophile, and thus, did not want Rogers associating with his children. (*See* Def.'s Exs. E, F, K.) It seems that Rogers filed a civil defamation lawsuit against Little for publicizing his sex offender status, after which Little and Rogers had appeared on "Judge Judy" together. On the

---

[2] All Defendants' exhibits are attached to the notice of motion and declaration of Rory McCormick, dated May 21, 2012 (Dkt. No. 51), and are labeled as follows: "Def.'s Ex. _."

show, Little stated repeatedly his beliefs about Rogers' alleged status as a pedophile, and as a result, Rogers allegedly threatened to kill Little. (Def.'s Ex. F.)

Little also explained to Cartagena that he had dated Ramirez for several years, but that the relationship had disintegrated after he refused to get a matching tattoo or to give up his girlfriend, Sandra Jones, who is the mother of Little's three-year-old child. (*Id.*) Little related to Cartagena that on the evening of October 23, he and Anderson were driving on Mulberry Street around 10:15 p.m. He claimed that Ramirez, who was speaking to Plaintiff on the street at the time, saw Little and said "there he goes!" (*Id.*) At that point, Little stated, Rogers pulled out a gun and shot at the vehicle several times. (*Id.*) Anderson corroborated Little's account to Cartagena. (Def.'s Ex. G.) Cartagena also interviewed Ramirez, and noted several inconsistencies in her recounting of events, detailing them all in his report. (Def.'s Ex. E.)

On October 29, 2010, Cartagena and Detective Robert Montalvo ("Montalvo"), after "staking out" Plaintiff's residence for several hours, together with officers Dibenedetto and Merante, stopped Rogers in his vehicle and took him into custody "without incident." (*Id.*) An inventory of Rogers' vehicle was taken upon impound, and no weapons or contraband were recovered. (*Id.*) At the time of his arrest, Plaintiff denied knowing Ramirez. (Def.'s SMF at ¶ 7.) Plaintiff's assertion was belied by the presence of Ramirez's contact information in his cell phone,[3] together with Little's and Anderson's statements. Plaintiff later admitted to being at Mulberry Street, though denied firing the shots at Little. (*Id.*; Def.'s Ex. E.) Later that day, Rogers was transported to Central Booking, where he was charged with the offense of attempted murder. (Def.'s Ex. R.)

---

[3] Though Cartagena asserts that Rogers gave him consent to search the contacts in his cell phone (Def.'s Ex. E), Rogers disputes that he ever gave such consent. (*See* Affirmation of Jelani Rogers, Dkt. No. 74 ("Pl.'s Opp."), at 3.)

3

That same day, Cartagena and Montalvo obtained a search warrant for Rogers' residence from Yonkers City Court Judge Martinelli. (Def.'s Ex. J.) The officers claim that they gained entry to Rogers' apartment using his house keys, and the search of the apartment did not yield any firearms. (Def.'s SMF at ¶ 8.) Defendants also state that no items were removed from Rogers' apartment. (*Id.*). Rogers, however, claims that several items were taken from his home and his vehicle; he further alleges that the detectives damaged his apartment door when gaining entry to the premises. (*See* Amended Complaint, Dkt. No. 37 ("Compl."), at 9-10.)

On November 8, 2010, Plaintiff was indicted by a Grand Jury on the charge of attempted murder. (*See* Def.'s Ex. K, at 3.) Later, in September 2011, Plaintiff pleaded guilty to the charge of attempted criminal possession of a weapon in the second degree, which constitutes a class D felony. (*Id.*; *see also* Def.'s SMF at ¶ 9.)

### B.     Procedural History

Plaintiff filed the initial Complaint in this action on November 17, 2010. (Dkt. No. 2.) On March 30, 2011, Defendants Cartagena and Montalvo answered. (Dkt. No. 7; Def.'s Ex. N.) Plaintiff amended his complaint in January 2012, adding the YPD, and Officers Rinaldi, Dibenedetto, Mecante, and Keppler as Defendants. In February 2012, Defendants filed their first motion for summary judgment. At a conference before this Court on March 6, 2012, however, Plaintiff indicated that he had outstanding discovery demands; thus, this Court denied Defendants' summary judgment motion without prejudice, giving Defendants an additional 45 days to respond to the demands, and 30 days thereafter to move for summary judgment. (Def.'s Ex. S.) Defendants filed amended answers on March 12, 2012 (Dkt. Nos. 38-40), and moved again for summary judgment in May 2012, after the conclusion of discovery. (Dkt. Nos. 51-53.) In response to Defendants' motion, Plaintiff has submitted two sets of documents, which this

Court has construed as his Opposition. (*See* Pl.'s Opp.; Supplemental Opposition of Jelani Rogers, Dkt. No. 90 ("Pl.'s Supp. Opp.").)

## II. Discussion

### A. Summary Judgment Standard

A court may grant a motion for summary judgment when all of the parties' submissions, read together, reveal that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see also El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010). The moving party bears the burden of "establishing the absence of any genuine issue of material fact." *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010). The non-movant benefits from the Court's construction of all facts, and the resolution of all ambiguities, in its favor. *See Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) ("In determining whether summary judgment is appropriate, this Court will 'construe the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'" (internal citations omitted)).

Although a court must construe the facts "in the light most favorable" to the non-movant, *id.,* it must nevertheless "dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Put another way, the nonmoving party must advance more than mere "conclusory statements, conjecture, or speculation" to successfully defeat a motion for summary judgment. *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also Anderson,* 477 U.S. at 249-50 ("If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." (internal citations omitted)).

### B. Claims Against Defendant the YPD

"At the outset, summary judgment must be granted in favor of Defendants with respect to all claims against the [YPD]." *Mesa v. City of New York*, No. 09 Civ. 10464, 2013 WL 31002, at *8 (S.D.N.Y. Jan. 3, 2013) (citation omitted). Courts look to state law when determining whether a municipal agency may be sued. *Id*; Fed.R.Civ.P. 17(b)(3). "Under New York law, a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence. Therefore, municipal departments . . . are not amenable to suit." *Hoisington v. County of Sullivan*, 55 F. Supp. 2d 212, 214 (S.D.N.Y. 1999). Here, the YPD is a departmental subdivision of the Yonkers municipality, and as such, cannot be sued. Accordingly, summary judgment is granted in favor of the YPD on all claims.

### C. Plaintiff's Claims Against Individual Defendants

#### 1. False Arrest

To prevail on a false arrest claim, a plaintiff must show that "(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Jocks v. Tavernier*, 316 F.3d 128, 134-35 (2d Cir. 2003) (citation and quotation marks omitted). Under both New York law and § 1983, the presence of probable cause is a complete defense to an allegation of false arrest. *Weyant v. Osk*, 101 F.3d 845, 852 (2d Cir. 1996). Probable cause is present when an officer has "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the

6

person to be arrested." *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) (quotations and citation omitted). "If, following the arrest, the plaintiff was convicted of the charges against him, that conviction normally 'would be conclusive evidence of probable cause.'" *Weyant*, 101 F.3d at 852 (quoting *Broughton v. State*, 37 N.Y.2d 451, 458, 373 N.Y.S.2d 87 (Ct. App. 1975)).

Here, the record establishes that Rogers pleaded guilty to attempted criminal possession of a loaded firearm. (Def.'s Ex. K.) While the original felony complaint prepared by Cartagena charged Rogers with attempted murder in the second degree, rather than the offense to which Rogers later pleaded guilty, it is well established than an officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). Moreover, in evaluating probable cause, courts look to the "validity of the *arrest*, and not the validity of each charge." *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2009). At the time of Rogers' arrest, two eyewitnesses identified him as the individual who shot at the vehicle in which they were riding. (Def.'s Exs. E, H.) Additionally, Cartagena investigated Little's vehicle, and observed a bullet hole on the passenger door, together with a spent bullet inside the cabin. It was therefore clearly reasonable for Cartagena to "believe [Little and Anderson] [were] telling the truth." *See Miloslavsky v. AES Engineering Soc., Inc.*, 808 F. Supp. 351, 355 (S.D.N.Y. 1992) ("Moreover, it is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, who it seems reasonable to believe is telling the truth." (citation omitted)); *accord Martinez*, 202 F.3d at 634.

Accordingly, Defendants are granted summary judgment on Plaintiff's false arrest claim.[4]

---

[4] Moreover, Defendants Keppler and Rinaldi, not being present, had no personal involvement in Rogers' arrest, and therefore any false arrest claim, regardless of the claim's validity, necessarily fails as to them. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this

2.       **Fourth Amendment Claims**

Rogers also asserts that Defendants illegally searched his home and vehicle in violation of his Fourth Amendment rights.  (Pl.'s Opp. at 4-5.)  In response, Defendants contend that given the fact that the "officers searched the Residence pursuant to a valid Search Warrant supported by probable cause, plaintiffs' Fourth Amendment unlawful search and seizure claim must fail." *Lynch ex rel. Lynch v. City of Mount Vernon*, 567 F. Supp. 2d 459, 464 (S.D.N.Y. 2008); (*see also* Defendants' Memorandum of Law, Dkt. No. 64 ("Def.'s Mem."), at 7-8.)

The Fourth Amendment protects the citizenry from unreasonable searches and seizures.  No search conducted pursuant to a valid search warrant violates this right, so long as the officers conducting the search do so within the warrant's scope.  "There are three requirements for a valid search warrant: the warrant must be issued by a 'neutral, disinterested magistrate[ ],' the person seeking the warrant must establish 'probable cause to believe that the evidence sought will aid in a particular apprehension or conviction for a particular offense' and the warrant must 'particularly describe the things to be seized, as well as the place to be searched.'"  *Lynch*, 567 F. Supp. 2d at 464-65 (quoting *Dalia v. United States,* 441 U.S. 238, 255 (1979)).  A court's "determination that probable cause exists to support the issuance of a warrant is entitled to 'great deference' from a reviewing court."  *Id.* at 465 (quotations omitted).  Moreover, "[a] police officer who relies in good faith on a warrant issued by a neutral and detached magistrate upon a finding of probable cause is presumptively shielded by qualified immunity from personal liability for damages."  *Simms v. Vill. of Albion, N.Y.*, 115 F.3d 1098, 1106 (2d Cir. 1997).  "Police activity conducted pursuant to a warrant rarely will require any deep inquiry into

---

Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)).

8

reasonableness because a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith." *Id.*

Based on interviews with eyewitnesses, an examination of the scene, and the sworn statements from Anderson and Little, Cartagena applied for a search warrant of Rogers' premises. (Def.'s Ex. I.) Judge Martinelli granted this search warrant application, noting that the subject property constituted (1) any firearm; (2) revolver; (3) pistol; (4) ammunition; (5) pistol magazines; and (6) firearm accessories such as holsters that is "unlawfully possessed," "stolen, has been used, or is possessed for the purpose of being used, to commit a crime, or conceal the commission of an offense, or constitutes evidence, or tends to demonstrate that an offense was committed, or that a [] person participated in [an offense's] commission . . . ." (*Id.*) There is no record evidence to suggest that the basis for this search warrant was fabricated or unreliable. To the contrary, a neutral Judge of the City Court of Yonkers issued a search warrant limited to items—namely, firearms—associated with the charged crime. This warrant was based on an officer's investigation and the sworn statements of two named eyewitnesses. Plaintiff has pointed to no record evidence suggesting that he can carry the "heavy burden" of showing that the search warrant was invalid, and thus, that the search violated his Fourth Amendment rights. *Cf. Lynch*, 567 F. Supp. at 465-66 (noting that a challenge to a search warrant based on the fact that "the Warrant Application was based entirely on information from one confidential informant who had been to the Residence only one time," and the informant himself was in custody at the time he proffered the information, was not sufficient to invalidate the warrant).

Of course, even a valid warrant may give rise to a Fourth Amendment violation whenever officers exceed its scope in its execution. *See E. Coast Novelty Co., Inc. v. City of New York*, 781 F. Supp. 999, 1008 (S.D.N.Y. 1992) ("[A]n officer's behavior in applying for a warrant

9

always is subject to review in a § 1983 action, as is an officer's conduct in executing a warrant. Even if a warrant is valid, '[o]fficers may face § 1983 liability for executing a warrant in an unreasonable manner.'"  (quoting *Bergquist v. County of Cochise,* 806 F.2d 1364, 1369 (9th Cir.1986) (internal citations omitted) (alteration in original)).

Here, Plaintiff makes several allegations concerning the scope of the warrant's execution. Specifically, Rogers claims that (1) his desktop Mac computer was taken from his home during the course of the search; (2) a Dell computer tower was destroyed; (3) his clothing was destroyed by the "spraying" of a substance throughout the house; (4) a Vibrant Galaxy phone from T-Mobile was missing from his home subsequent to the search; and (5) there was damage done to the front door.  (*See* Compl. at 9-10.)  There is no record evidence to support these claims.  And while a court may not engage in credibility determinations at the summary judgment stage, *see Beatie v. City of New York*, 123 F.3d 707, 710-11 (2d Cir. 1997),[5] neither may a plaintiff "rest on allegations in the pleadings," but rather, "must point to specific evidence in the record to carry [his] burden on summary judgment." *Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006).

Plaintiff also asserts that the search of his automobile upon his arrest was not on consent, and thus unlawful under the Fourth Amendment.  Defendants assert that (1) Plaintiff consented

---

[5] In commenting on the weighing of evidence at the summary judgment stage, the Second Circuit has noted:
> When deciding a summary judgment motion, a trial court's function is not to weigh the evidence, make credibility determinations or resolve issues of fact, but rather to determine whether, drawing all reasonable inferences from the evidence presented in favor of the non-moving party, a fair-minded jury could find in the non-moving party's favor. Where the evidence in the record could reasonably support a verdict in the non-moving party's favor, summary judgment is improper.

(internal citations omitted)).

to the search (Def.'s Mem. at 7; Def.'s Ex. E); and (2) the vehicle was impounded and inventoried incident to Plaintiff's lawful arrest.  (Def.'s Mem. at 7.)

It is well established that police are "permitted to contemporaneously conduct [] warrantless search[es] of [a suspect's] automobile and the passenger compartment" whenever that search is one "incident to a lawful arrest."  *United States v. Foreman*, 993 F. Supp. 186, 190 (S.D.N.Y. 1998) (citation omitted); *accord United States v. Scopo*, 19 F.3d 777, 782 (2d Cir. 1994) ("It follows that, once the police had probable cause to stop and arrest Scopo, they were entitled to search both him and his 'grab space' in the car, especially since one officer had observed him throw an object down in the car." (citing *New York v. Belton,* 453 U.S. 454, 460 (1981) ("when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile") (footnotes omitted); *United States v. Paulino,* 850 F.2d 93, 98 (2d Cir.1988) (the defendant's "furtive movement provided a legal basis for the protective search"), *cert. denied*, 490 U.S. 1052 (1989)).

Here, as discussed *supra*, Defendants had probable cause to arrest Rogers, given the investigation and eyewitness reports that suggested his involvement in the Mulberry Street shooting.  Thus, upon Rogers' arrest, it was lawful for Defendants to search his vehicle incident to taking him into custody.  Moreover, there is no record evidence to suggest that the impounding of Rogers' vehicle was instigated by anything other than routine procedure.  In fact, as Defendants note in their brief, the Complaint admits that the vehicle was released to Rogers' relatives in the weeks following his arrest.  (Def.'s Mem. at 7; *see also* Compl. at 9.)

Rogers also asserts that several items were taken from his truck; moreover, Rogers claims that the truck itself was damaged during the towing process, and was returned to him with nails

11

in its tires. (Compl. at 12.) Again, at the summary judgment stage, a plaintiff may not rely simply on the allegations in his complaint to create a genuine issue of material fact. Here, there is no record evidence from which a reasonable jury could find that Defendants destroyed or absconded with Rogers' property; nor is there any evidence that creates an issue of fact as to the putative damage done to Rogers' automobile.

Accordingly, summary judgment is granted as to Plaintiff's claims relating to the search of his home and vehicle.

### III. Conclusion

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED. The Clerk of Court is directed to close this case.

SO ORDERED.

Dated: New York, New York
March 28, 2013

_____
J. PAUL OETKEN
United States District Judge